IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILLY E. FULLER, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-0982-BF (R) |
| | § | |
| MICHAEL ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the United States Magistrate Judge. This is an appeal from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying the claim of Billy E. Fuller ("Plaintiff") for supplemental social security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court considered "Plaintiff's Brief on Appeal," "Defendant's Brief," and "Plaintiff's Reply Brief." For the reasons stated below, the final decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff Billy E. Fuller was born on October 23, 1956. (Tr. at 100.) Plaintiff applied for SSI benefits on December 17, 2001, alleging disability due to hip, wrist, and ankle problems since March 15, 2001.[1] (Tr. 100, 107.) Plaintiff contended that he was unable to sit and stand for long periods because of pain in his hips and swelling in his ankles, that he could not lift things because of pain in his wrists and that he suffered from depression. (Tr. 107, 120.) Plaintiff was 46 years old when

---

[1] During the hearing, Plaintiff amended his date of disability to June 30, 2001 after the ALJ discovered was still working after March 15, 2001 as an assembler. (Tr. 504-05.)

1

he applied for benefits and 49 years old on the date of the hearing. (Tr. 12, 100.) Plaintiff has a high school education and has performed past relevant work as an assembler. (Tr. 17.)

Following a hearing on December 9, 2005, the Administrative Law Judge David N. Herstam (the "ALJ") denied Plaintiff's claim. (Tr. 11-13.) The ALJ concluded that Plaintiff is unable to perform his past relevant work. (Tr. 17, Finding No. 5.) He also found, however, that Plaintiff has the residual functional capacity ("RFC") to perform light work activity, limited by the need to avoid repetitive use of reaching with the right upper extremity, and to be limited to occupations that do not require more than minimal reading or writing and limited public contact. (Tr.15, Finding No. 4.) The ALJ found that despite the fact that Plaintiff's exertional limitations did not allow him to perform the full range of light work, there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 18, Finding No. 9.) The Appeals Council denied Plaintiff's request for review and the findings of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to determining whether the decision is supported by substantial evidence, and whether the proper legal standards were applied to evaluate the evidence. *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

The court may not "reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. Substantial evidence is that which a reasonable mind might accept to support a conclusion. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). It is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). In order to make a finding of no substantial evidence, the court must determine that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)). Even if the Court determines that the evidence preponderates in Plaintiff's favor, the Court must still affirm the Commissioner's finding if there is substantial evidence to support those findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner and not this Court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *See Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether: (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a mental or physical impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520 (4)(a)(i)-(v). The claimant bears the initial burden of proving he or she is disabled under the first four steps.

*See Leggett*, 67 F.3d at 564. If at any point during the examination of the first four steps the Commissioner determines the claimant is or is not disabled, the inquiry terminates. *See id.* If the claimant meets his or her burden, the Commissioner then bears the burden at step five to show the claimant is capable of performing other gainful employment available in the national economy. *See Greenspan*, 38 F.3d at 236. The Commissioner may satisfy this burden by referencing the Medical-Vocational Guidelines of the regulations or by expert vocational expert testimony or other similar evidence. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

For purposes of social security cases, "disability" means an inability to engage in substantial gainful activity because of a medically determinable mental or physical impairment or combination of impairments that could be expected to either last for a continuous period of not less than 12 months or to result in death. *See* 42 U.S.C. § 423(d)(1)(A). In order to establish disability, the record must show that the limitations imposed by Plaintiff's conditions prevent him from engaging in any substantial gainful activity. *See Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).

When reviewing a decision of "not disabled," the Court's function is to determine whether the record as a whole contains substantial evidence that supports the final decision of the Commissioner, as the trier of fact. *See Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). Four elements of proof should be weighed to determine if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of examining and treating physicians; (3) Plaintiff's subjective evidence of pain and disability; and (4) age, education, and work history. *See Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)). The ALJ must

develop the facts fully and fairly relating to an applicant's claim for disability benefits. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). If the ALJ fails to do this, the decision is not substantially justified. *Id*. Nevertheless, the ALJ's decision should be reversed only if Plaintiff shows that he or she was prejudiced. *Id*. A procedurally imperfect administrative ruling should not be overturned unless the substantive rights of a party have been prejudiced. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997).

**ANALYSIS**

Plaintiff contends that the Commissioner's decision was not supported by substantial evidence and that the proper legal standards were not applied. (Pl.'s Br. at 4.) Plaintiff objects to the Commissioner's decision on five grounds. Plaintiff contends that: (1) the ALJ's unfavorable decision was not supported by substantial evidence because of unreliable medical expert testimony; (2) the ALJ failed to properly evaluate Plaintiff's credibility; (3) the ALJ erroneously found that Plaintiff retained the residual functional capacity ("RFC") for light work; (4) the ALJ erroneously applied the Medical Vocational Guidelines in finding that Plaintiff was not disabled; and (5) the ALJ improperly found that Plaintiff could perform past relevant work because of unreliable Vocational Expert ("VE") testimony. (Pl.'s Reply Br. at 1, 5, 7, 8.)

**Medical Expert Testimony**

Plaintiff first argues that the ALJ should not have relied upon the medical expert testimony of Dr. Homer Reeves, M.D., because Dr. Reeves gave an inaccurate summary of Plaintiff's medical records. (Pl.'s Br. at 4.)[2] Specifically, Plaintiff alleges that the medical expert improperly concluded

---

[2]At Plaintiff's hearing, two medical experts testified. (Tr. 541, 551.) Plaintiff does not object to the second medical expert testimony provided by Dr. Antoinette Cicerello-McGarrahan, Ph.D., regarding Plaintiff's psychological and mental health.

5

that Plaintiff had a "congenital defect" of his right hand and that there was no evidence in the record indicating abnormalities of Plaintiff's hip or the diagnosis of gouty arthritis. (*Id.* at 9-10.) Plaintiff argues that the ALJ's reliance upon the medical expert's inaccurate testimony is evident in the hearing transcript and in the ALJ's decision. (Pl.'s Reply Br. at 4.) Therefore, Plaintiff asserts that he was prejudiced by the ALJ's unjustified reliance upon the medical expert's incomplete and inaccurate review of the medical records.

The medical expert's testimony, standing alone, raises some issues for concern. The medical expert concluded that Plaintiff had no clinical history or findings involving his hip. (Tr. 542.) However, evidence indicates that Plaintiff was wounded by a gun shot in the lower quadrant of his right hip in 1996. (Tr. 151.) An x-ray taken in August of 2002 of Plaintiff's right hip also showed residual shotgun pellets which projected over his right ilium. (Tr. 273.) Consulting physician, Dr. Julius Wolfram, M.D., further noted that Plaintiff had "limitation of all movements of the right hip by pain." (Tr. 207.) The medical expert also testified that he found no objective medical evidence supporting Plaintiff's subjective complaints of swelling in his joints, particularly the right wrist, and opined that Plaintiff had a congenital defect of his right hand. (Tr. 542, 544.) However, a diagnosis of degenerative joint disease in Plaintiff's right wrist was made by Dr. Margaret M. Fynes, M.D., in April of 2005. (Tr. 273, 480.) Other x-rays taken of Plaintiff's right wrist, performed at various times, showed numerous findings, including osteoporosis of carpal bones and narrowed intercarpal joints. (Tr. 483.) Finally, the medical expert stated that no physician had opined that Plaintiff had gouty arthritis. (Tr. 542.) But Dr. Pankaj Patel, M.D., stated that Plaintiff suffered from "gout." (Tr. 461.) Thus, to the extent the medical expert's testimony can be seen to be in conflict with this evidence, it was not reflective of Plaintiff's true condition at the time he was treated for his injuries.

6

Regardless, the medical expert's inaccuracies do not present reversible error in this case. The ALJ had both accurate medical records and the medical expert's interpretation of the medical records available when the medical expert testified and when the ALJ issued his decision. Plaintiff argues that the ALJ's reliance upon the medical expert's inaccurate testimony is evident in his findings. Specifically, Plaintiff notes that the ALJ states:

> As for the opinion evidence, the undersigned has considered the State Agency medical consultant's opinion that the claimant can perform medium work . . . but notes that this opinion is from a non-examining source and that the record indicates that the claimant would have a greater degree of limitation as described in the medical expert testimony from Dr. Reeves and in the residual functional capacity.

(Tr. 17, Finding No.4.) Unlike the State Agency medical consultant who opined that Plaintiff could perform medium work and unlike the medical expert's testimony that Plaintiff could perform light work, the ALJ found that Plaintiff could not perform the full range of light work activity. (Tr. 15, 546-47.) The ALJ rejected the medical expert's characterization of Plaintiff's RFC, adopting the exertional limitations identified by Plaintiff instead. And, to the extent the ALJ rejected Plaintiff's claims of non-exertional limitations, that decision was plainly premised upon the complete absence of any objective medical evidence to support Plaintiff's claims, rather than upon any erroneous testimony from the medical expert. *See* 20 C.F.R. § 404.1513(a) (requiring evidence from acceptable medical sources to establish medically determinable impairments). The ALJ's decision does not reflect any unjustified reliance upon inaccurate testimony from the medical expert and the transcript reflects nothing more than that the ALJ considered the medical expert's testimony. Therefore, Plaintiff was not prejudiced by any inconsistency between the medical expert's testimony and the medical records submitted to the ALJ. *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant

7

makes no showing that he was prejudiced in any way by the deficiencies he alleges.").[3]

## **Plaintiff's Credibility**

Plaintiff challenges the ALJ's assessment of his credibility, contending that the ALJ made conclusory statements, which are specifically prohibited by Social Security Regulations, rather than giving specific reasons for his decision.

Credibility determinations are generally the province of the ALJ, and his credibility evaluations are entitled to deference. *See Carrier v. Sullivan* 944 F.2d 243, 247 (5th Cir. 1991). The ALJ must consider subjective evidence of pain as testified to by the claimant. *See Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). The subjective complaints of a claimant must be corroborated by objective medical evidence demonstrating the existence of the symptoms before a disability may be determined. *See Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991); 20 C.F.R. § 404.1528(a) (mere testimony, without supporting objective medical evidence, cannot establish disability). The ALJ must indicate "the credibility choices made and the basis for those choices in resolving . . . the truthfulness of subjective symptoms and complaints." *See Scharlow*, 655 F.2d at 649. *See also* SSR 96-7p ("[T]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight."). The ALJ's failure to specifically indicate credibility choices and the basis behind

---

[3]Plaintiff repeatedly contends that the ALJ misplaced his reliance on the medical expert's summary of the medical evidence as being the cause behind an erroneous credibility determination, an erroneous RFC determination, a misapplication of the Medical Vocational Guidelines, and an incomplete hypothetical question. (Pl.'s Br. at 4, 5.) (Pl's Reply Br. at 5, 7.) Because the ALJ appropriately considered all the medical evidence, and not just the medical expert's testimony, additional discussion regarding the ALJ's reliance on the medical expert's opinion is not required.

them requires reversal and remand. *See Scharlow*, 655 F.2d at 649.

When evaluating Plaintiff's credibility, the ALJ considered Plaintiff's severe physical and mental impairments and also the medical evidence, the treatment sought and received, and the medication prescribed. (Tr. 14-17.) *See* 20 C.F.R. § 416.929(c). The ALJ also gave weight to Plaintiff's subjective complaints of pain and found "that the claimant's statements concerning the intensity, duration and limiting effects of these systems," were credible to the extent that they were consistent with the objective medical evidence and other evidence. (Tr. 15.) In discrediting Plaintiff's testimony regarding the extent of his impairments, the ALJ cited to medical expert testimony from Dr. Homer Reeves, M.D., and Dr. Antoinette Cicerello-McGarrahan, Ph.D., and medical examinations performed by Dr. Julius Wolfram, M.D., Dr. Peter Holm, M.D., and State Agency medical consultants. (Tr. 16-17, Finding No. 4.) For example, the ALJ specifically pointed to medical examinations to support his finding that claimant had normal range of motion in his hips and wrists. (Tr. 16, Finding No. 4.) The ALJ noted that medication and treatment stabilized Plaintiff's depression so that he had normal judgment and insight. (*Id.*)

Unlike Plaintiff's contention, the ALJ set out sufficient specific reasons to comply with the relevant specificity requirements imposed on him by the Social Security Regulations. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence."). Substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. The ALJ committed no reversible error in his credibility findings.

## **Residual Functional Capacity**

Plaintiff argues that the ALJ's decision did not include all of Plaintiff's limitations supported by the record, did not provide a rationale for disregarding some of Plaintiff's complaints, and did not explain his finding regarding Plaintiff's education level and ability to read and write, thereby rendering his assessment of Plaintiff's RFC flawed and unsupported by substantial evidence.

Plaintiff first argues that the ALJ's finding is erroneous because the range of light work he could perform was limited by severe impairments to his hip and wrist and major depression. (Tr. 15-17.) "Subjective evidence need not take precedence over objective evidence." *See Villa*, 895 F.2d at 1024. Besides Plaintiff's subjective complaints, State Agency medical consultants and medical experts opined that Plaintiff was capable of performing either medium or light work. (Tr. 15-17.) Substantial evidence also indicated that Plaintiff's alleged impairments would not limit the full range of light work. For instance, x-rays showed no visible abnormality to Plaintiff's right hip and no evidence of acute bone injury or fracture of Plaintiff's right wrist. (Tr. 273, 335, 339.) The most recent tests revealed that Plaintiff was capable of performing at least light work. (Tr. 17, Finding No. 4.) Regardless, the ALJ found that Plaintiff's capacity to perform light work was reduced by severe impairments in his right wrist and upper hip area, restrictions against repetitive use of his right upper extremity, and limitations in concentration. (Tr. 15, 18.) The ALJ also found that Plaintiff should have limited public contact. (Tr. 17, Finding No. 4.) The record reflects that the ALJ evaluated Plaintiff's subjective complaints regarding Plaintiff's bowel movements and the side effects Plaintiff's medications had on Plaintiff's ability to maintain work. (Tr. 520, 532, 555-57.) The only relevant effect that the ALJ's finding had was to decrease the number of relevant jobs in the national economy that Plaintiff presently could perform.

Finally, Plaintiff argues the ALJ did not properly explain his rationale when he concluded that Plaintiff had at least a high school education level and minimal reading and writing capabilities. (Pl.'s Br. at 15, 17.) In his Disability Report, Plaintiff indicated that he had completed the twelfth grade at Garland High School. (Tr. 113.) Plaintiff testified that he could not read or write but also testified that he could read or "glance" over the newspaper and write his name and a sentence. (Tr. 526, 527.) Thus, Plaintiff seems to argue, the ALJ should not have relied on his disability report and testimony, and should have deemed Plaintiff illiterate. (Pl.'s Br. at 14-15.)

The ALJ did not err in finding that Plaintiff had the equivalent of a high school education and could perform work requiring minimal reading and writing. (Tr. 15, 17.) The Social Security Regulations explain that a person is generally defined as illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *See* 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1). The ALJ's finding that Plaintiff had a high school education and minimal reading and writing skills is supported by substantial evidence: Plaintiff's testimony and the disability report. (Tr. 137, 526-27.) *See Perez v. Barnhart*, 415 F.3d 457 (5th Cir. 2005) (finding claimant's testimony and school records supported the ALJ's conclusion that applicant had a high school education). Further, Plaintiff's counsel failed to ask the VE a single question or present the expert with his own hypothetical question concerning a claimant in a lower educational category. (Tr. 486-588.) Because the ALJ's findings that Plaintiff had a high school education and minimal reading and writing skills were supported by substantial evidence, the ALJ's decision should not be reversed on this basis.[4]

---

[4] *See e.g., Perez v. Barnhart*, 415 F.3d 457, 462-64 (5th Cir. 2005) (finding substantial evidence supported the ALJ's finding that claimant had a high school education when claimant's testimony and school records showed that he had a high school education).

## Medical Vocational Guidelines

Plaintiff contends that the ALJ improperly applied the Medical-Vocational Guidelines ("the Grid") of the Social Security Regulations when determining Plaintiff was not disabled because the ALJ failed to properly define Plaintiff's education and failed to consider whether Plaintiff should be defined as a person of advanced age. (Pl.'s Br. at 16-17.) Plaintiff contends that if the ALJ had done so, he would have met one of the listings from the Grid and have been deemed disabled based on Rules 201.17 and 202.09. (*Id.*) *See* 20 C.F.R. Pt. 404, subpt. P, App.2, Listings 201.17, 202.09.

The Commissioner's analysis at step five typically involves an evaluation of the claimant's RFC to perform a particular category of work (i.e. sedentary, light, medium, heavy or very heavy work), in combination with an application of the Grid to determine whether an individual of the claimant's age, education, and work experience could engage in substantial gainful activity. *See* 20 C.F.R. Part 404, subpt. P, App 2. "When the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *See Selders*, 914 F.2d at 619.[5] If the ALJ determines that a claimant suffers from a non-exertional impairment that prevents the performance of the claimant's past work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform.

---

[5]Exertional impairments affect only the ability to meet strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling). *See* 20 C.F.R. § 404.1569a(b).

*See Martin v. Heckler*, 748 F.2d 1027, 1034 (5th Cir. 1984).[6]

Plaintiff first contends that the ALJ should have characterized Plaintiff as illiterate and applied Rules 201.17 and 202.09. (Pl.'s Br. at 16.) However, Plaintiff's argument that these Rules apply are first predicated on a finding of illiteracy, a finding that properly, the ALJ did not make. Thus, the Court's determination that the ALJ was correct in finding that Plaintiff was not illiterate precludes application of both Rules, regardless of whether or not Plaintiff was found to be a person "closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d) (age 50-54).

The ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15, Finding No. 3.) *See* 20 C.F.R. § 416.920(e). After considering the medical evidence and Plaintiff's subjective complaints that were medically significant to the issue of determining disability, the ALJ adopted the opinion of psychological expert Dr. McGarrahan in finding that Plaintiff was moderately limited in "maintaining concentration, persistence and/or pace," and "should be precluded from jobs that required complex or detailed instructions and should have limited public contact." (Tr. 17, Finding No. 4.) Because of these non-exertional impairments, the ALJ found that Plaintiff could not perform his past work. (Tr. 17, Finding No. 5.) Accordingly, the ALJ chose not to exclusively rely on the Grid to determine whether work exists in the national economy which Plaintiff can perform. *See Martin*, 748 F.2d at 1034 ( "[W]hen nonexertional limitations are shown, a disability decision cannot be made solely on the basis of vocational guidelines."). The ALJ's decision reflected both an understanding of the inadequacy of the Grid and

---

[6]Non-exertional impairments are those which do not result in strength limitations, e.g., certain mental, sensory, or skin impairments. Some impairments may also result solely in postural, manipulative or environmental limitations. *See* 20 C.F.R. pt. 404, subpt. P, 200(e).

13

the need for VE testimony to develop the issue further. *See Fraga v. Bowen*, 801 F.2d 1296, 1304 (5th Cir. 1987).[7] Given the record, the ALJ had sufficient evidence to conclude that the Grid alone was not determinative of Plaintiff's claim.

## **VE Testimony**

Plaintiff contends that substantial evidence does not support the ALJ's decision because the ALJ did not include all of Plaintiff's limitations in his hypothetical question to the VE. (Pl.'s Br. at 18.) Plaintiff also argues that the ALJ's decision was not supported by substantial evidence because the VE's testimony that Plaintiff could perform certain jobs was in conflict with the description given to those jobs in the Dictionary of Occupational Titles ("DOT"). (Pl.'s Br. at 19.)

The hypothetical question must reasonably incorporate the disabilities recognized by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Plaintiff's counsel must have the opportunity to correct any defect in the hypothetical question by mentioning additional limitations or suggesting any purported defects to the VE. *Id.* at 435-36. When the ALJ includes all disabilities supported by the evidence and provides Plaintiff's counsel the opportunity to correct the hypothetical question and suggest additional disabilities not recognized by the ALJ's findings, the VE's answer to the hypothetical question can provide substantial evidence supporting a denial of benefits and "a determination of non-disability based on such a defective question cannot stand." *Id.* at 436. *See also Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

The ALJ asked the VE to consider a hypothetical individual with Plaintiff's RFC and other characteristics, specifically, an individual of Plaintiff's age, education and work experience who

---

[7]Plaintiff acknowledged the need for VE testimony: "Because Plaintiff's RFC is limited by significant non-exertional limitations, the ALJ was required to rely on the vocational expert to make his finding at his step in the sequential evaluation." (Pl.'s Br. at 18.)

could perform limited light work activity. (Tr. 560-61.) The ALJ brought to the VE's attention Plaintiff's repetitive-motion limitations and restricted upper extremity, and the ALJ confined the inquiry to light work jobs permitting a sit/stand option, involving minimal reading and writing and limited public contact. (Tr. 560-61.) The VE responded by stating that such a person could perform the jobs of cleaner, laundry folder, and mail clerk. (Tr. 562-63.) Although Plaintiff asserts the ALJ did not pose a proper hypothetical regarding his impairments, he does not state what limitations were omitted. (Pl.'s Br. at 18.) The ALJ's questions reasonably notified the VE of Plaintiff's disabilities and Plaintiff's counsel was given the opportunity to correct any defects in the hypothetical. (Tr. 567.) Because the hypothetical reflected the claimant's abilities as determined by the ALJ, the VE's answers provided substantial evidence upon which the ALJ could rely. *See Bowling*, 36 F.3d at 436 (5th Cir. 1994). Therefore, no error is apparent from the ALJ's questioning.

Second, if substantial evidence supports the VE's opinion, the Court may affirm the ALJ, irrespective of the claimed conflict between the DOT descriptions and the VE's specific testimony. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any *implied* or *indirect* conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocation expert's testimony provided that the record reflects an adequate basis for doing so.") (italics added). Direct conflicts occur "when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT." *Id.* Indirect conflicts, on the other hand, occur "when the vocational expert's testimony places the ALJ's finding with respect to the claimant's residual functional capacity or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT." *Id.* at 144. Automatic

reversal of the ALJ's decision is not warranted by merely establishing tangential conflicts. *Id.* at 146.

In this case, the record reflects an adequate basis for the ALJ's reliance on the VE's testimony. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's RFC and other characteristics. (Tr. 560-61.) The VE testified that such an individual could perform the jobs of cleaner, laundry folder and mail clerk as light, unskilled jobs, which comport with both the DOT and the ALJ's determination of Plaintiff's RFC. (Tr. 562-564.) Moreover, Plaintiff's counsel had an opportunity at the administrative hearing to cross-examine the VE about the jobs the he cited. (Tr. 566.) While Plaintiff's counsel did cross examine the VE, he did not raise any objections regarding the classification of the jobs the VE cited. (Tr. 560-68.) Instead, Plaintiff's counsel made deviations on the ALJ's hypothetical individual and asked if someone who was on heavy medication could perform the jobs identified and if "someone who would miss work three times or more" could maintain the jobs identified by the VE. (Tr. 567.) The Fifth Circuit has explained:

> [C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*See Carey*, 230 F.3d at 146-47. For these reasons, Plaintiff fails to show that the ALJ reversibly erred in concluding that he could perform other work in the national economy.

**RECOMMENDATION**

The Court hereby finds that substantial evidence supports the Commissioner's decision. Therefore, the final decision of the Commissioner is affirmed.

It is so ordered, August 12, 2008.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE